IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ALYSSA MOATE LARRY,

          Plaintiff,

v.                                    CIVIL ACTION NO. 1:15CV212
                                           (Judge Keeley)

THE MARION COUNTY COAL COMPANY,
and MURRAY AMERICAN ENERGY, INC.,

          Defendants.


MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
    DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
    JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
    ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)

     Plaintiff Alyssa Moate Larry ("Larry") was terminated from her
employment at defendant The Marion County Coal Company ("MCC"), a
subsidiary of defendant Murray American Energy, Inc. ("MAEI), after
returning from maternity leave under the Family and Medical Leave
Act ("FMLA"). Larry alleges that, by selecting her for layoff, MCC
denied her rights under the FMLA, and discriminated and retaliated
against her on the basis of her sex and her pregnancy in violation
of the West Virginia Human Rights Act and the Pregnancy Workers'
Fairness Act. She further alleges that MAEI aided and abetted MCC
in engaging in unlawful discrimination and retaliation.

     Pending before the Court are the defendants' motions for
summary judgment. For the reasons that follow, the Court **GRANTS in
part** and **DENIES in part** MCC's motion (Dkt. No. 75), and **GRANTS**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

MAEI's motion (Dkt. No. 77).

## I. BACKGROUND

**A.    Factual Background**

### 1.    Larry's Employment History with MCC

Beginning in September 2012, Larry was employed by the Consolidation Coal Company ("CCC") as a Mine Clerk at its Loveridge Mine located in Marion and Monongalia Counties, West Virginia (Dkt. No. 75-1 at 4-5). Larry was then one of two Mine Clerks at the Loveridge Mine, where, along with Human Resource Supervisor Pamela Layton ("Layton") and Human Resource Coordinator Ilya Shlyahovsky ("Shlyahovsky"), she was one of the four employees who formed the entirety of the Human Resources Department at the mine. Id. at 6.

On December 15, 2013, following MAEI's purchase of the Loveridge Mine, MCC assumed operation of the mine and renamed it the Marion County Mine. Id. at 7-8. Larry, Layton, and the other Human Resources staff members were all hired by MCC and continued to work in their same positions. Id. at 8.

In February 2014, Shlyahovsky was promoted to the Human Resource Supervisor position at another MAEI mine, and left his Human Resource Coordinator position at the Marion County Mine. Id. at 11. Layton encouraged Larry to apply for the position and

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

supported her candidacy with Paul Piccolini ("Piccolini"), the Vice President of Human Resources and Employee Relations of Murray Energy Corporation, a related entity that provides certain human resource related services to MCC and other MAEI companies. Id. at 12-13; Dkt. No. 75-5 at 1.

With Piccolini's approval, Larry was formally promoted to Human Resource Coordinator at the Marion County Mine on March 31, 2014 (Dkt. No. 75-8 at 1). However, she continued to perform her prior Mine Clerk duties, together with her new responsibilities, until a new Mine Clerk was hired in July 2014 (Dkt. No. 75-2 at 36; Dkt. No. 75-9 at 1).

In October 2014, Piccolini authorized the creation of a second Human Resource Coordinator position at MCC, and also at each of four other mines owned by MAEI (Dkt. No. 75-1 at 16; Dkt. No. 76-6 at 11; Dkt. No. 75-10 at 1). On December 15, 2014, MCC selected Eric Zuchowski ("Zuchowski") for the second Human Resource Coordinator position at the Marion County Mine (Dkt. No. 75-1 at 17; Dkt. No. 75-9 at 1). Like Larry, Zuchowski was promoted from his prior position as a Mine Clerk, and continued to perform certain of his prior Mine Clerk duties, as well as his new responsibilities as Human Resource Coordinator, until a replacement

Mine Clerk could be hired and trained. Zuchowski formally assumed
the second Coordinator position on April 27, 2015 (Dkt. No. 75-12).

### 2.  Larry's Pregnancy-Related FMLA Leave and Accommodation Following Leave

On February 6, 2015, Larry gave birth to a son (Dkt. No. 75-1
at 20). She sought and received FMLA-covered leave from February 6
until her return to work on March 23, 2015. <u>Id.</u> at 21.

Upon returning to work, Larry was required to express breast
milk using a mechanical pump three to four times each day, and
suggested to Layton that she be permitted to use a file closet
attached to their shared office for that purpose. <u>Id.</u> at 22-23.
Larry alleges that Layton responded "that wouldn't be a good idea
in case someone was in the office." <u>Id.</u> at 23. It was Larry's sense
that Layton believed that it would be inconvenient for Larry to use
the office closet, where salaried employee files were kept. <u>Id.</u> As
a result, Larry began taking her lactation breaks in the women's
restroom. <u>Id.</u> at 24.

### 3.  MCC's Reductions in Force and Larry's Layoff

In May 2015, MCC decided to reduce production at the Marion
County Mine from seven to five days per week due to poor coal
market conditions (Dkt. No. 75-2 at 5). A corresponding reduction

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

in force resulted in layoffs of approximately 180 hourly workers, as well as 34 salaried employees (Dkt. No. 75-9 at 2). Within the Human Resources Department, Layton was required to reduce her four-person staff by one member (Dkt. No. 75-2 at 6). Layton decided to eliminate one of the two Human Resource Coordinator positions, and ultimately selected Larry as the Coordinator to be laid off. Id. at 13, 17. Larry was notified of her layoff on May 28, 2015 (Dkt. No. 75-1 at 33; Dkt. No. 75-16).

At the time of Larry's layoff from MCC, Shlyahovsky, her predecessor, was employed as the Human Resource Supervisor at an MAEI sister mine, The Monongalia County Coal Company (Dkt. No. 75-2 at 27). In July 2015, approximately two months after Larry's layoff, Shlyahovsky was transferred back to the Marion County Mine and demoted to the position of Human Resource Coordinator there (Dkt. No. 75-2 at 26-27; Dkt. No. 76-5 at 9-10). Shlyahovsky remained in that position for approximately three months, when he then was reassigned elsewhere (Dkt. No. 75-18 at 2). Shlyahovsky ultimately was laid off in a December 2015 reduction in force (Dkt. No. 75-6 at 10; Dkt. No. 75-19 at 1).

**B. Procedural Background**

On October 20, 2015, Larry sued MCC in the Circuit Court of

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

Monongalia County, West Virginia (Dkt. No. 1-2), asserting claims
of (1) sex discrimination in violation of the West Virginia Human
Rights Act, W. Va. Code §§ 5-11-1, et seq. ("HRA"); (2) pregnancy
discrimination in violation of the West Virginia Pregnant Workers'
Fairness Act, W. Va. Code §§ 5-11B-1, et seq. ("PWFA"); (3)
retaliation in violation of the HRA and PWFA; and (4) interference
with her rights and retaliation in violation of the Family and
Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"). Id. at 4-6.
She also sued MAEI for aiding and abetting MCC in engaging in
unlawful sex discrimination, pregnancy discrimination, and
retaliation in violation of the HRA and PWFA. Id. at 4-5. On
November 10, 2015, the defendants removed the case to this Court
(Dkt. No. 1).

On January 9, 2017, the Court stayed the case pending receipt
of answers to two questions certified to the Supreme Court of
Appeals of West Virginia, which bore directly on the potential
damages available in Larry's case (Dkt. No. 94). See Martinez v.
Asplundh Tree Expert Co., 803 S.E.2d 582 (W. Va. 2017). After
receiving the answers to the certified questions, the Court
conducted a conference with the parties on July 26, 2017, to
discuss the status of the case (Dkt. No. 97). After the Supreme

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

Court of Appeals of West Virginia entered the mandate in Martinez, Larry filed a motion to lift the stay in this case, which the Court granted on November 1, 2017. Now pending are the defendants' motions for summary judgment, which are fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

477 U.S. 317, 323 (1986). Once the moving party has made the

necessary showing, the non-moving party "must set forth specific

facts showing that there is a genuine issue for trial." Anderson,

477 U.S. at 256 (internal quotation marks and citation omitted).

The "mere existence of a scintilla of evidence" favoring the non-

moving party will not prevent the entry of summary judgment; the

evidence must be such that a rational trier of fact could

reasonably find for the nonmoving party. Id. at 248–52.

### III. DISCUSSION

**A.    State Law Discrimination Claims Against MCC**

In Count One of the complaint, Larry contends that MCC's

decision to select her for layoff was substantially motivated by

her sex and her pregnancy, which constitute violations of the West

Virginia Human Rights Act and the Pregnant Workers' Fairness Act

(Dkt. No. 1-1 at 4).

**1.    Sex and Pregnancy Discrimination Under the HRA and PWFA**

The West Virginia Human Rights Act ("HRA"), W. Va. Code §§ 5-

11-1, et seq., prohibits employers from discriminating against any

individual with respect to "compensation, hire, tenure, terms,

conditions or privileges of employment." W. Va. Code § 5-11-9(c).

Discrimination "means to exclude from, or fail or refuse to extend

8

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

to, a person equal opportunities because of . . . sex . . . ." W. Va. Code § 5-11-3(h).

The Supreme Court of Appeals of West Virginia has long recognized that discrimination based upon pregnancy constitutes sex discrimination under the HRA. See, e.g., Syl. pt. 1, Montgomery Gen. Hosp. v. W. Va. Human Rights Comm'n, 346 S.E.2d 557, 559 (W. Va. 1986)("Discrimination based upon pregnancy constitutes illegal sex discrimination under the West Virginia Human Rights Act, W. Va. Code 5-11-9(a)[1981].")(quoting Syl. pt. 2, Frank's Shoe Store v. W. Va. Human Rights Comm'n, 365 S.E.2d 251, 258 (W. Va. 1986)). In 2014, the West Virginia Legislature codified the protections afforded to pregnant employees with the adoption of the Pregnant Workers' Fairness Act ("PWFA"), W. Va. Code §§ 5-11B-1, et seq., which explicitly requires employers to reasonably accommodate their employees' "known limitations related to pregnancy, childbirth, or related medical conditions," including lactation. W. Va. Code § 5-11B-2(1); W. Va. C.S.R. § 77-10-2.

Discrimination claims brought under the HRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Shepherdstown Volunteer Fire Dep't v. State

9

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

ex rel. State of W. Va. Human Rights Comm'n, 309 S.E.2d 342, 352 (W. Va. 1983)(reaffirming use of the McDonnell Douglas standard in West Virginia). The PWFA provides that the procedures and remedies regarding unlawful employment practices in violation of the Act are the same as those for the HRA. W. Va. Code. § 5-11B-3.

Despite the fact that Larry has alleged separate claims for sex discrimination under the HRA and pregnancy discrimination under the PWFA, both claims are premised on the same allegation that MCC's decision to select her for layoff was substantially motivated by her recent pregnancy leave and ongoing lactation breaks, and thus ultimately are grounded in the same set of facts and circumstances. And, as discussed, pregnancy discrimination clearly constitutes sex discrimination under the HRA, and the procedures and remedies regarding violations of the HRA and PWFA are the same. Therefore, for the purposes of MCC's motion, the Court will apply the same analytical framework to determine whether Larry's claims under the HRA and PWFA survive summary judgment.

**2.    Applicable _Prima Facie_ Formulation and Burden-Shifting Framework**

In order to set forth a prima facie case of impermissible employment discrimination under the HRA or PWFA, a plaintiff must

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)

establish the following: (1) that she is a member of a protected

class; (2) that the employer made an adverse employment decision

affecting her; and (3) that, but for her protected status, the

employer would not have made the adverse decision. Syl. pt. 3,

Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 429 (W. Va.

1986). In establishing the third element of the prima facie case,

the plaintiff must "show some evidence which would sufficiently

link the employer's decision and the plaintiff's status as a member

of a protected class so as to give rise to an inference that the

employment decision was based on an illegal discriminatory

criterion." Id. at 429-30. The plaintiff can establish this link by

any of the following methods: (1) an admission from the employer,

(2) unequal or disparate treatment between members of the protected

class and others, (3) the elimination of legitimate reasons for the

decision, or (4) statistics showing that members of the protected

class receive substantially worse treatment than others. Id. at

430.

    While acknowledging that the prima facie case set forth in

Conaway applies to the large majority of discriminatory discharge

claims under the HRA, MCC argues that a different formulation

applies here because Larry was terminated as part of a larger

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

reduction in force ("RIF") at the Marion County Mine.

In the context of larger RIFs, the Fourth Circuit has applied a modified prima facie case formulation, requiring the plaintiff to establish: (1) that she was within the protected category; (2) that she was selected from a larger group of candidates; (3) that she was performing at a level substantially equivalent to the lowest level in the group retained; and (4) that the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. Corti v. Storage Tech. Corp., 304 F.3d 336, n. 6 (4th Cir. 2002).

Although it appears that the Supreme Court of Appeals of West Virginia has not yet been presented with the specific opportunity to adopt the RIF test in Corti, the Court need not decide that issue here. Although the May 2015 reduction in force at the Marion County Mine resulted in the layoff of thirty-four salaried employees, including Larry, the record is clear that only one position was eliminated from the Human Resource Department, and that the employee group from which Larry was chosen consisted of, at best, Larry, fellow Human Resource Coordinator Zuchowski, and the two Mine Clerks. It is undisputed that Zuchowski was retained

12

in the remaining Coordinator position.

Given these facts, the Court is not persuaded that this case is properly characterized as a typical reduction-in-force suit, or that the elements of the modified RIF test are applicable. <u>See, e.g.</u>, <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 546 (4th Cir. 1995), <u>reversed on other grounds</u>, 517 U.S. 308 (1996)(questioning applicability of RIF <u>prima facie</u> formulation where the reduced "force" consisted of two people, and although the plaintiff's position was eliminated, he was essentially replaced by another employee).

Rather, because "the complexities and difficulties of determining what employee was replaced by whom in the typical mass layoff case is simply not an issue here," the Court will analyze Larry's claims of sex and pregnancy discrimination using the traditional <u>prima facie</u> formulation. <u>O'Connor</u>, 56 F.3d at 546. Under <u>Conaway</u>, once the plaintiff establishes a <u>prima facie</u> case, the burden shifts to the employer to advance a non-discriminatory reason for the plaintiff's dismissal. <u>Conaway</u>, 358 S.E.2d at 430. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a

protected class." Id.

After the employer explains its decision, the employee may rebut the employer's legitimate, non-discriminatory reason. Id. The burden then shifts back to the plaintiff to prove that the facially legitimate reason given by the employer for the employment decision was merely a pretext for a discriminatory motive. Eddy v. Biddle, No. 1:11CV137, 2013 WL 66929, at *6 (N.D.W. Va. Jan. 4, 2013) (quoting Ford Motor Credit Co. v. W. Va. Human Rights Comm'n, 696 S.E.2d 282, 293 (W. Va. 2010)) (internal quotation marks omitted). At that point, "the issue of whether the plaintiff [has] established a prima facie case . . . [becomes] irrelevant." Skaggs v. Elk Run Coal Co., Inc., 479 S.E.2d 561, 583 (W. Va. 1996). "To get to the jury, the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact." Id.

### 3.   Analysis

Under the Conaway framework, the first step in the Court's analysis is to determine whether Larry has sufficient prima facie evidence of sex and pregnancy discrimination to survive summary judgment. She has clearly established the first two elements of her claim: She is a female, and accordingly, a member of the protected

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

class; further, MCC made an adverse employment decision when it terminated her as a Human Resource Coordinator at the Marion County Coal Mine in May 2015. At issue is the third prong of Larry's <u>prima facie</u> case. MCC argues that Larry has failed to present any evidence of a nexus between her termination and her sex, pregnancy, or pregnancy-related accommodations (Dkt. No. 87 at 9). Larry contends, however, that MCC's decision to terminate her was "contaminated" by her recent pregnancy leave and ongoing lactation breaks (Dkt. No. 84 at 1).

To establish the third prong of her <u>prima facie</u> case, Larry is required only "to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." <u>Barefoot v. Sundale Nursing Home</u>, 457 S.E.2d 152, 161 (W. Va. 1995), holding modified by <u>Dodrill v. Nationwide Mut. Ins. Co.</u>, 491 S.E.2d 1 (1996)(citing <u>Conaway</u>, 358 S.E.3d at 429-30). In other words, the third prong is "merely a threshold inquiry," requiring only that Larry establish an inference of discrimination. <u>Id.</u>

Here, sufficient facts exist to permit a rational finder of

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

fact to infer a discriminatory motive. After being promoted to Human Resource Coordinator in March 2014, Larry had received back-to-back pay increases in October 2014 and January 2015 (Dkt. No. 84-1 at 92). A performance evaluation completed by Layton on January 23, 2015--just two weeks before Larry went on maternity leave--indicated Larry was "meeting expectations" in all categories assessed (Dkt. No. 84-18). In the same evaluation, Layton reported that Larry was "function[ing] very well in HR coordinator role." Id. Approximately two months after her return from maternity leave, and during the time when she was taking lactation breaks at work, however, Larry was chosen for layoff while a newly promoted male Human Resource Coordinator, who had obviously neither taken maternity leave nor required lactation breaks, was retained in the position. Thus viewed, Larry has satisfied the "threshold inquiry" required under Conaway and Barefoot, and established a prima facie case of sex discrimination under the HRA and pregnancy discrimination under the PWFA.

The burden then shifts to MCC to establish a legitimate, non-discriminatory reason for terminating Larry. MCC asserts that it selected Larry for layoff because it no longer had confidence that she would "carry out her duties professionally" and "maintain the

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

requisite confidentiality of the sensitive information entrusted to her" as a Human Resource Coordinator (Dkt. No. 75 at 8). Layton testified that she believed Larry was leaking confidential information to hourly employees and union officials (Dkt. No. 75-2 at 10-11). Although she denied divulging confidential information, Larry admitted that she made personal telephone calls to other employees from her office, during which she discussed both "personal stuff" and "stuff going on in the mine" (Dkt. No. 75-1 at 42-43). Layton testified that, during one such call, she overheard Larry denigrating Marion County Mine Superintendent Brian Frederickson ("Frederickson") and Assistant Superintendent Brandon Laxton ("Laxton"), behavior Layton viewed as potentially causing friction between hourly workers and management (Dkt. No. 75-2 at 12).

Laxton himself testified that, on multiple occasions, hourly employees or union officials learned through leaked information that disciplinary action was to be taken by mine management before those decisions had been announced or could be implemented (Dkt. No. 75-15 at 3-9). He further testified that, in each instance of leaked human resource information, Larry was believed to be the source. Id. Based on this, MCC has offered a legitimate, non-

17

discriminatory reason for terminating Larry. Conaway, 358 S.E.2d at 430.

Given that, Larry bears the burden of establishing that MCC's reason for terminating her was pretextual. Id. She argues that MCC's assertions that she was leaking confidential information are "baseless" and were manufactured to cover up its discriminatory motives for her layoff (Dkt. No. 84 at 2). For example, Laxton testified that he believed Larry advised a union representative of pending disciplinary measures against two hourly workers (Dkt. No. 75-15 at 3-4), but Larry cites evidence that the information conveyed to the union representative was known by people other than Larry, that the fax machines likely utilized in communicating the information were in public work areas, and that the events occurred after Larry had left work for the day (Dkt. No. 84-12 at 19-21; Dkt. No. 84-1 at 27).

Laxton also testified about a second incident in which Larry was the only person, other than Frederickson, whom he told about the hiring of 25 contract workers; nevertheless, the union representative found out about the plan (Dkt. No. 75-15 at 6-7). Larry pointed out in response that Laxton admitted that the need for contractors was first brought to his attention by mine

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

employees, and that he did not tell Larry that the information was confidential. Id. at 7-8.

Further, Layton testified that, other than counseling Larry after overhearing the telephone call about Superintendents Frederickson and Laxton, she had never discussed any confidentiality concerns with her (Dkt. No. 84-4 at 23-24). Tellingly, none of these concerns was mentioned in Larry's January 2015 performance evaluation (Dkt. No. 84-18).

Larry also relies on evidence that Zuchowski, the male employee retained as Human Resource Coordinator instead of Larry, was less experienced in the role and may not have even been considered for layoff in May 2015. Despite Layton's testimony that Zuchowski was among the candidates considered for layoff, the "layoff list" generated by MCC did not include his name (Dkt. No. 84-4 at 15; Dkt. No. 84-9 at 1). And, while Zuchowski was permitted to participate in meetings with Layton, Laxton, and other MCC managers to discuss who would be laid off, Larry was not involved in those meetings (Dkt. No. 84-4 at 6; Dkt. No. 84-1 at 38-39).

Finally, in an attempt to refute Larry's evidence of pretext, MCC argues that it is entitled to the "same actor" inference, that arises when an employee "was hired and fired by the same person

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

within a relatively short time span." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). Where present, this fact "creates a strong inference that the employer's stated reason for acting against the employee is not pretextual." Id. The record in this case, however, gives rise to no such inference.

MCC contends that Layton was solely responsible for the decisions to hire, promote, and terminate Larry. Larry disputes that contention, however, asserting that the decision to terminate her was made jointly by Layton, Frederick, and Laxton. As previously noted, Layton consulted with Frederickson and Laxton to identify would be selected for layoff (Dkt. No. 84-4 at 6, 8). Layton herself acknowledged that the decision to terminate Larry was based on information provided by her "bosses," Frederickson and Laxton. Id. at 8.

On this record, a genuine issue of material fact exists as to whether Layton can be wholly credited with the decision to terminate Larry, and thus whether the same actor inference should apply. See Burgess v. Bowen, 466 Fed.Appx. 272, 280 n. 4 (4th Cir. 2012) (same actor inference is not appropriate where a factual dispute exists over who made the termination decision); Constellium Rolled Prod. Ravenswood, LLC v. Rogers, No. 2:15-cv-13438, 2017 WL

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

1552325, at *10 (S.D.W. Va. Apr. 28, 2017) (same). The Court therefore declines to apply the same actor inference on summary judgment.

Viewing the evidence in the light most favorable to Larry, as it must (Providence, 211 F.3d 846 at 850), the Court concludes that Larry has "offer[ed] sufficient evidence that the employer's explanation was pretextual to create an issue of fact." Skaggs, 479 S.E.2d at 583. The Court thus **DENIES** MCC's motion for summary judgment on Larry's claims for sex discrimination under the HRA and pregnancy discrimination under the PWFA.

**B.    State Law Retaliation Claims Against MCC**

In addition to claims of sex and pregnancy discrimination, Larry also alleges in Count One that MCC terminated her in retaliation for asserting her rights under West Virginia law, in violation of the HRA and PWFA (Dkt. No. 1-1 at 4).

Under West Virginia law, Larry must establish the following elements to state a prima facie claim for retaliatory discharge under the HRA and PWFA: (1) she was engaging in protected activity; (2) her employer was aware of the protected activity; (3) her employer took adverse action against her; and (4) the adverse action was retaliatory or, in the absence of such evidence, was

21

sufficiently temporally related to the protected activity to allow an inference of retaliatory motive on the part of the employer. Syl. pt. 10, <u>Hanlon v. Chambers</u>, 464 S.E.2d 741, 753 (W. Va. 1995)(citing Syl. pt. 1 <u>Brammer v. Human Rights Comm'n</u>, 394 S.E.2d 340 (1990)). Once Larry establishes her <u>prima</u> <u>facie</u> case, the burden shifts to MCC to articulate a legitimate, non-discriminatory reason for her termination. <u>Cooper v. Norfolk and Western Ry. Co.</u>, 870 F. Supp. 1410, 1418 (S.D.W. Va. 1994). Finally, Larry has the opportunity to rebut MCC's proffered reason as mere pretext. <u>Id.</u>

At issue is whether Larry engaged in a "protected activity" within the meaning of the HRA or PWFA, the statutes upon which her state law retaliation claims rest. Under the HRA, it is unlawful for an employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he has opposed any practices or acts forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article." W. Va. Code § 5-11-9(7)(C). The PWFA contains similar language prohibiting discrimination against an individual who "has opposed any act or practice made unlawful by this article or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)

hearing under this article." W. Va. Code 5-11B-3(b).

The Supreme Court of Appeals of West Virginia has interpreted such protected activity to include "that which challenges any practices or acts forbidden under" the statute. Hanlon, 464 at 753 (internal quotations omitted). In Hanlon, the Supreme Court explained that the HRA prohibits

> an employer or other person from retaliating against any individual for *expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the Human Rights Act*. This standard has both an objective and a subjective element. The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible. Further, the view must be honestly held and be more than a cover for troublemaking.

Id. at 754 (emphasis added). It further commented that "[t]he legislative purpose in including the anti-retaliation provision was obviously to encourage people to come forward and expose unlawful employment practices and to do so without fear of reprisal." Id.

Citing Hanlon, the Supreme Court later applied the same definition of protected activity:

> Under Hanlon, "protected activity" includes opposition to conduct that the plaintiff reasonably and in good faith believes violates the provisions of the Human Rights Act.

Conrad v. ARA Szabo, 480 S.E.2d 801, 813 (W. Va. 1996). Thus, to have engaged in "protected activity" under either the HRA or PWFA,

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

Larry must have challenged or otherwise opposed MCC conduct that she reasonably and in good faith believed unlawful under those statutes.

Here, Larry has failed to establish that she engaged in any such activity. It is clear her claim is grounded in the assertion that MCC retaliated against her because of her maternity leave and lactation breaks following her return to work. As to her pregnancy-related leave, it is undisputed that Layton approved Larry's claim for maternity leave, and that Larry was granted every day of leave she sought (Dkt. No. 75-1 at 21). Larry conceded that, to her knowledge, neither Layton nor anyone in management complained or otherwise made negative comments about that leave. Id.

As to her ongoing lactation breaks at work, it is also undisputed that Larry was permitted as many breaks as she needed. Id. at 28. She testified that, other than her initial discussion with Layton regarding where she might perform that activity, there was no further discussion with Layton or anyone else regarding the issue (id. at 24-25, 28), and she requested no alternate accommodation. Id. at 31.

Because Larry has not demonstrated that she engaged in a protected activity within the meaning of the HRA or PWFA, she has

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

failed to establish a _prima facie_ case of retaliation under either statute. Accordingly, the Court **GRANTS** MCC's motion for summary judgment on Larry's state law claims for retaliation.

## C.    FMLA Claims Against MCC

### 1.    Interference

In Count Three of the complaint, Larry alleges that, by laying her off, MCC knowingly interfered with the exercise of her FMLA rights (Dkt. No. 1-1). After MCC moved for summary judgment, Larry withdrew her interference claim (Dkt. No. 84 at 23). The Court therefore **GRANTS** MCC's motion for summary judgment on Larry's claim for interference under the FMLA.

### 2.    Retaliation

Although she has abandoned her interference claim, Larry maintains that her layoff constituted unlawful retaliation under the FMLA.

Under 29 U.S.C. § 2615(a)(2), employers may not retaliate against employees for exercising rights under the FMLA. See Dotson v. Pfizer, Inc., 558 F.3d 284, 295 (4th Cir. 2009) Much like claims brought under Title VII, under the FMLA, a plaintiff "must prove three elements to establish a prima facie case of retaliation: (1) she engaged in protected activity, (2) her employer took an adverse

employment action against her, and (3) there was a causal link between the two events." Adams v. Anne Arundel Cty. Public Schools, 789 F.3d 422, 429 (4th Cir. 2015) (internal quotation omitted) (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc)). If, in response, the employer "advances a lawful explanation for the alleged retaliatory action," id., the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 304 (4th Cir. 2016).

Here, Larry has established a prima facie case of retaliation. First, it is undisputed that she engaged in a protected activity by taking FMLA leave. Second, it is undisputed that MCC terminated her employment. Third, because Larry was terminated a mere two months after returning to work from FMLA leave, the "close temporal proximity between activity protected by the statute and adverse employment action" demonstrates causation. Waag v. Sotera Defense Solutions, Inc., 857 F.3d 179, 192 (4th Cir. 2017); see also Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 551 (4th Cir. 2006).

In response, MCC has advanced the "lawful explanation" that it terminated Larry because it "no longer had confidence that [she]

26

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

would carry out her duties professionally and maintain the requisite confidentiality of the sensitive information entrusted to her" (Dkt. No. 75 at 8). Therefore, to survive summary judgment, Larry bears the burden to demonstrate that a material dispute exists as to whether this explanation is merely pretextual. Vannoy, 827 F.3d at 304.

Of course, "[t]he FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Id. at 304-05. As acknowledged above, MCC has offered evidence that its decision resulted from Larry's perceived inability to maintain the confidentiality of sensitive information, but the parties dispute whether MCC actually relied on these alleged confidentiality concerns in selecting Larry for layoff. While the law does not prevent MCC from terminating sub-par employees as it sees fit, Laing v. Fed. Express Corp., 703 F.3d 713, 722 (4th Cir. 2013), the law does prohibit it from basing such decision on the exercise of a protected right. For the reasons previously discussed, most notably the disputed evidence regarding the alleged leaks of confidential information at the mine, as well as Zuchowski's involvement in the selection of employees for layoff and his subsequent retention in the role of Human Resource

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART**
**DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY**
**JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN**
**ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

Coordinator, a reasonable jury could infer from the record that MCC's lawful explanation for Larry's layoff is merely pretextual. The Court therefore **DENIES** MCC's motion for summary judgment on Larry's claim for retaliation under the FMLA.

**D.    State Law Aiding and Abetting Claim Against MAEI**

MAEI has moved for summary judgment on Larry's sole claim that it aided and abetted MCC in engaging in unlawful discrimination and retaliation against her "by assisting in selecting Larry for layoff and/or by transferring a male employee from another of its mines to replace [her]," in violation of the HRA and PWFA (Dkt. No. 1-1 at 5).

The HRA provides for a cause of action against individuals who aid or abet an unlawful discriminatory act. Holsten v. Norandex, Inc., 461 S.E.2d 473 (1995). The HRA provides, in relevant part, that it shall be an unlawful discriminatory practice

> (7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to[1]:
>
> > (A) ... aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.

---

[1] It is undisputed that MAEI qualifies as a "person" against whom an aiding and abetting action may be filed under the HRA.

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

W. Va. Code § 5-11-9(7). As discussed earlier, the PWFA incorporates the remedies available under the HRA. W. Va. Code § 5-11B-3(a).

As an initial matter, the parties dispute the meaning of the terms "aid" and "abet," which the HRA does not define. Because this court sits in diversity on Larry's state law claims, it must apply West Virginia state substantive law. Erie R.R. Co. v. Thompkins, 304 U.S. 64, 78 (1938). Further, it "must apply state law as it presently exists and may not suggest or surmise its expansion." McDaniel v. Travels Prop. Cas. Ins. Co., 121 F.Supp 2d 508, 512 (N.D.W. Va. 2000)(citing Wells v. Liddy, 186 F.3d 505, 521 (4th Cir. 1991)).

Where, as here, there is no relevant West Virginia state substantive law defining the terms "aid" and "abet," this Court must predict how West Virginia state courts would decide the question. Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994). In predicting how West Virginia state courts would do so, the Court must not expand upon the laws of West Virginia. Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999)(citing St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)). Consequently, "[t]he determination of the intent of the Legislature

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN
ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

of the State of West Virginia is solely within the province of the West Virginia Supreme Court of Appeals and its subordinate courts, not with the federal courts. It is not the role of the judiciary to contradict the state courts on their law." Jones v. Painter, 140 F.Supp.2d 677, 679 (N.D.W. Va. 2001).

Although the Supreme Court of Appeals of West Virginia has not construed "aiding and abetting" specifically within the context of the HRA, other state courts and federal courts of appeals that have addressed the applicable legal standard for aiding-and-abetting claims under similar state statutes have adopted and applied the Restatement (Second) of Torts § 876(b). See, e.g., Ellison v. Plumbers & Steam Fitters Union Local 375, 118 P.3d 1070, 1077 (Alaska 2005)(applying Restatement § 876(b) when construing provision that "[i]t is unlawful for a person to aid, abet, incite, compel, or coerce the doing of a[n unlawful discriminatory] act"); Tarr v. Ciasulli, 853 A.2d 921, 928-29 (N.J. 2004)(applying Restatement when construing provision that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under the New Jersey Law Against Discrimination); Failla v. City of Passaic, 146 F.3d 149, 157-58 (3d Cir.

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

1998)(adopting Restatement standard in the context of employment discrimination and predicting that the New Jersey Supreme Court would do the same).

Further, although not in a common law cause of action for aiding and abetting, West Virginia's highest court has previously applied the Restatement standard in the civil context, holding that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Syl. pt. 2, <u>Barath v. Performance Trucking Co.</u>, 424 S.E.2d 602, 603 (W. Va. 1992); Syl pt. 5, <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 420 (W. Va. 1991)(citing Restatement (Second) of Torts § 876(b)).

Based on the consistent application by other courts of the Restatement (Second) § 876(b) to aiding-and-abetting claims under similar statutes, as well as West Virginia's own application of the standard in other civil causes of action, this Court is persuaded that West Virginia would apply § 876(b) of the Restatement (Second) of Torts when a construing a claim for aiding and abetting under the HRA.

Here, pursuant to § 876(b), Larry contends that MAEI knew that

31

MCC's layoff of Larry was discriminatory, and that it gave "substantial assistance or encouragement" to MCC in accomplishing that discrimination. MAEI refutes this, arguing that it was "in no way involved in the development of procedures or criteria used by MCC in connection with its determination of which salaried employees would be laid off as part of the May 2015 reduction in force," and that it did not participate in MCC's decision to select Larry for layoff (Dkt. No. 78 at 5). As discussed, § 876(b) concludes that aiding and abetting liability occurs when the actor "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." Larry has not satisfied that standard.

Notably, Larry does not specifically allege that MAEI "knew" that MCC had discriminated against her, as required by § 876(b). Rather, she alleges that MAEI did not sufficiently "question" or review MCC's decisionmaking process in selecting Larry for layoff (Dkt. No. 85 at 13). This does not amount to "substantial encouragement or assistance." See, e.g., Failla, 146 F.3d at 159 ("Employees are not liable as aider and abetter merely because they had some role, or knowledge or involvement. Rather the degree of involvement, knowledge and culpability required as a basis for

32

liability is heightened by the standard that the Restatement sets forth and we adopt. Only those employees who meet this heightened standard will be aiders and abettors."); Ellison, 118 P.3d at 1077-78 ("We look to the Restatement (Second) of Torts for guidance, which other courts have adopted in interpreting state statutes on aiding and abetting discrimination . . . . Ellison has made no attempt to satisfy this standard. She points out that the stewards had knowledge of discriminatory actions and did not report them, but this does not amount to 'substantial encouragement or assistance.'").

The other evidence on which Larry relies in support of her aiding and abetting claim is MAEI's transfer of Shylahovsky to the Marion County Mine within two months of her layoff. While MAEI concedes that it made the decision to demote Shlyahovsky and transfer him back to the Marion County Mine as a Human Resource Coordinator, it contends that the decision to select Larry for layoff in May 2015 was made unilaterally by Layton, without any input or approval from MAEI. Id. As discussed earlier, genuine issues of material fact exist as to who made the decision to select Larry for layoff. Those disputed issues of fact, however, relate to who among MCC personnel and management--namely, Layton,

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

Frederickson, and Laxton--were the decision makers regarding Larry's layoff.

Contrary to Larry's contention that MAEI was involved in MCC's decision, Piccolini testified that, while he ultimately receives and "reviews" layoff lists generated at MAEI mines, he does not "evaluate" the lists because, in his role as Vice President of Human Resources and Employee Relations of Murray Energy Corporation, he has "no knowledge of" various mine employees' work performance and therefore relies upon personnel at each mine to make those evaluations (Dkt. No. 77-3 at 13-14). He further testified that layoff lists are generally sent to him for the purpose of "keep[ing] [him] apprised of what's happening at the mine level," id. at 13, and that in the case of the layoff list at issue here, he was not aware that Larry had been selected for layoff until he "received the final listing of everybody who was involved" in the reduction. Id. at 14. Further, Piccolini's only prior involvement with Larry's employment at MCC was his 2014 approval of her promotion to Human Resource Coordinator and the accompanying increase in her salary.

Even when the evidence is viewed in the light most favorable to Larry, no genuine issues of material fact exist regarding MAEI's

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

involvement in the decision to lay off Larry, and a reasonable jury could not find that MAEI was a decision maker regarding both Larry's layoff and Shylavoksky's transfer back to the Marion County Mine. For these reasons, the evidence is insufficient for Larry to establish a claim for aiding and abetting discrimination against MAEI. Furthermore, because the Court has granted MCC's motion for summary judgment on Larry's claim for retaliation under the HRA, Larry cannot maintain a claim against MAEI for aiding and abetting such retaliation. The Court therefore **GRANTS** MAEI's motion for summary judgment.

### IV. CONCLUSION

For the reasons discussed, the Court:

- **GRANTS in part and DENIES in part** MCC's motion for summary judgment on Count One (Dkt. No. 75) and **DISMISSES** Larry's state law retaliation claim, **WITH PREJUDICE**;

- **GRANTS** MAEI's motion for summary judgment (Dkt. No. 77) and **DISMISSES** Count Two, **WITH PREJUDICE**; and

- **GRANTS in part and DENIES in part** MCC's motion for summary judgment on Count Three (Dkt. No. 75) and **DISMISSES** Larry's FMLA interference claim, **WITH PREJUDICE**.

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT MARION COUNTY COAL COMPANY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 75) AND GRANTING DEFENDANT MURRAY AMERICAN ENERGY, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 77)**

The case will proceed to trial as scheduled as to defendant MCC on Larry's claims of sex discrimination in violation of the HRA (Count One), pregnancy discrimination in violation of the PWFA (Count One), and retaliation in violation of the FMLA (Count Three).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order with respect to defendant Murray American Energy, Inc.

DATED: January 31, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE